IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.   3:06cr61/MCR
    3:07cv367/MCR/MD

CATRINA MARSH

## REPORT AND RECOMMENDATION

This matter is before the court upon a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255.[1] (Doc. 93).  The government has filed a response (doc. 98) and the defendant has not filed a reply, despite having been afforded the opportunity in which to do so.  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), and that the motion should be denied.

**I.  BACKGROUND**

Defendant was charged in a single count information with conspiracy to possess with intent to distribute 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, and fifty (50) grams or more of a mixture and substance containing cocaine base in violation of 21 U.S.C. § 841(b)(1)(A)(ii) and (iii).  (Doc. 76).

---

[1] Defendant filed a motion for extension of time to file memorandum in support of her § 2255 motion (doc. 95), which was granted (doc. 94), but she never filed her memorandum, and has not filed any other pleading since that date.

represented by appointed counsel George F. Murphy, on June 1, 2006 defendant waived her right to be charged by indictment and pleaded guilty to the information pursuant to a standard written plea and cooperation agreement. (Doc. 78-81).

The written statement of facts in support of guilty plea provided that the defendant was part of a criminal organization that imported multiple kilograms of cocaine per month from January 2005 through May of 2006 into the Northern District of Florida. (Doc. 81). This cocaine was distributed in the form of both powder and cocaine base, and co-defendants were caught with both substances as well as firearms. In fact, defendant was the only conspirator not separately charged with using a firearm in connection with a drug trafficking offense.

Sharon Dixon and Rafael Goodwin, two of the co-conspirators in this case, distributed powder and crack cocaine to confidential informants as part of controlled buys. Telephone conversations during which they talked about their drug organization were also intercepted, and they were identified as being armed when conducting their drug transactions. (Doc. 81 at 1-2). Goodwin and Avarah Williams purchased drugs, and distributed some as powder and cooked the rest into crack for distribution. Co-defendants Tabitha Dixon and S. Dixon lived together in multiple homes that were being used as "stash houses" for the cocaine they were distributing. T. Dixon was identified as distributing 20 grams of crack cocaine for the organization and had also been caught with a loaded weapon and a large quantity of cash. (*Id*. at 3).

Defendant Marsh possessed over 10 grams of crack cocaine at her home upon her arrest. She was identified as the "driving partner" for Sharon Dixon, and as knowingly allowing her home to be used as a "stash house" for S. Dixon. (Doc. 81 at 3). She also was aware of what S. Dixon was doing when they went out selling cocaine together.

The statement of facts noted that Goodwin, S. Dixon, T. Dixon, Marsh and Williams all were working to reap the financial benefits of the distribution of cocaine and cocaine base and "all but Marsh actually possessed handguns in furtherance of such activity." (Doc. 81 at 3). Finally, it provided that the organization distributed "well over 5 kilograms

of cocaine and 50 grams of crack cocaine" during the time specified in the indictment. (Doc. 81 at 3-4).

The plea proceeding for defendant and co-conspirators Rafeal Goodwin, Sharon Dixon, Avarah Williams, and Tabitha Dixon was held on June 1, 2006. The charging documents charged each defendant with conspiracy to possess with intent to distribute a controlled substance and each defendant except defendant Marsh with using or carrying a firearm in furtherance of a drug trafficking crime. (Doc. 97 at 6-7). When asked by the court, defense counsel indicated that he had gone over the defendant's plea and cooperation agreement in considerable detail with her, as well as the statement of facts. (Doc. 97 at 40). The court went over some of the provisions of the agreements, in particular emphasizing that any predictions of sentence or suggestions that a defendant might be eligible for a substantial assistance motion were not binding or guaranteed. (*Id.* at 50-52). The court warned the defendants that they were bound by the facts presented in the statement of facts but that the government could come forward at sentencing to introduce additional facts to try to support an adjustment in the sentence. (*Id.* at 64). Defendant Marsh accepted the statement of facts as presented as it pertained to her. (*Id.* at 66).

In the PSR, defendant was held accountable for distribution of 5.6 kilograms of crack cocaine, yielding a base offense level of 38. She received a two level decrease pursuant to §2D1.1(b)(7)[2] because she met the criteria set forth in subdivisions (1)-(5) of subsection (a) of § 5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases). She also received a two level increase pursuant to §2D1.1(b)(1) due to the seizure of firearms and ammunition from her residence and storage unit and her awareness of the purpose of these items. She received a three level reduction for acceptance of responsibility pursuant to § 3E1.1(b) for a total offense level of 35. With defendant's criminal history category of I, the applicable advisory guidelines range was 168 to 210 months.

---

[2] This section is now 2D1.1(b)(9).

*Case No: 3:06cr61/MCR; 3:07cv367/MCR/MD*

At sentencing counsel noted that defendant did not remember making the quantity of trips listed in the PSR, although this did not affect the guidelines calculation, and stated that the PSR could be relied upon for sentencing. (Doc. 98, exh. 2 at 4). The application of the safety valve was discussed, as well as the fact that it was essentially offset by the adjustment for co-conspirator possession of a firearm. (*Id.* at 6-8). On August 23, 2006, defendant was sentenced to a term of 168 months imprisonment, at the low end the applicable guidelines range to take into account her cooperation, her education and her lack of significant criminal history. (*Id.* at 9). She did not appeal. The present motion was timely filed on August 22, 2007.

## II. LEGAL ANALYSIS

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). "[A] non-constitutional error that may justify reversal on direct appeal does not generally support a collateral attack on a final judgment, unless the error (1) could not have been raised on direct appeal and (2) would, if condoned, result in a complete miscarriage of justice." *Lynn*, 365 F.3d at 1232-33 (citations omitted); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962) (error of law does not provide basis for collateral attack unless claimed error constituted a "fundamental defect which inherently results in a complete miscarriage of justice."). The "fundamental miscarriage of justice" exception recognized in *Murray v.*

*Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); *see also United States v. Bender,* 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d

997, 1002 (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). In applying *Strickland*, the court may dispose of an ineffective assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007)*; Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 496 F.3d 1270, 1281 (11th Cir. 2007); *United State v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.

*Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been

ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).

### Application of firearm adjustment

Defendant contends that the court erred in applying a two level adjustment for possession of a firearm. She asserts that because she received this adjustment, she was denied the benefit of the "safety valve."

A motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that she is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Even if this issue is not considered procedurally barred, it is factually and legally unsupported. Despite her coconspirators' involvement with firearms, defendant <u>did</u> qualify for application of the safety valve, although the benefit she would have received was essentially "offset" by the firearm adjustment. Application of this adjustment under §

2D1.1(b)(1) is proper unless it is clearly improbable that the possession of the weapon was connected to the offense. U.S.S.G. § 2D1.1, comment (n.2); *see also United States v. Stallings,* 463 F.3d 1218, 1220 (11th Cir. 2006); *United States v. Novaton*, 271 F.3d 968, 1013, n.13 (11th Cir. 2001); *U.S. v. Audain*, 254 F.3d 1286, 1289 (11th Cir. 2001). To justify a firearms adjustment, the government must either establish by a preponderance of the evidence that the firearm was present at the site of the charged conduct or prove that the defendant possessed a firearm during conduct associated with the offense of conviction. *Stallings,* 463 F.3d at (11th Cir. 2006) (citing *Audain*, 254 F.3d at 1289). If the government is successful in meeting this initial burden, then the evidentiary burden shifts to the defendant, who must demonstrate that a connection between the weapon and the offense was "clearly improbable." *Id.* The § 2D1.1(b)(1) enhancement may be applied when the firearm is possessed by a co-conspirator. *United States v. Pham*, 463 F.3d 1239, 1245 (11th Cir. 2006) (citing *United States v. Fields*, 408 F.3d 1356, 1359 (11th Cir.), cert. denied --- U.S. ----, 126 S.Ct. 221, 163 L.Ed.2d 193 (2005)). In this case, the other conspirators' use of firearms was well-established and uncontested; each defendant except Marsh pleaded guilty to using or carrying a firearm in furtherance of a drug trafficking crime. (See doc. 97; PSR ¶ 32-37, 41-54, 63-66, 77). Furthermore, law enforcement discovered ammunition in defendant's residence and two firearms in a storage unit that belonged to her at the time of her arrest. (PSR ¶ 66).

Drug Quantity

Defendant contends that the quantity of drugs attributed to her was unsubstantiated as being "in her possession." Again, this issue was not raised on appeal, and as such is procedurally barred. *Lynn, supra*. However, even if it were not, it is without merit.

In this case, as in most drug cases, not all drugs that were trafficked were recovered. In such a situation, the district court must approximate the quantity of the controlled substance for which the defendant must be held accountable. U.S.S.G. § 2D1.1 comment (n. 12); *United States v. Rodriguez,* 398 F.3d 1291, 1296 (11th Cir. 2005) (citing *United States v. Frazier*, 89 F.3d 1501, 1506 (11th Cir.1996)). In "estimating the quantity of drugs attributable to a defendant, a court may base its computation on evidence

showing the average frequency and amount of a defendant's drug sales over a given period of time." *Rodriguez,* 398 F.3d at 1296 (citing *Frazier*, 89 F.3d at 1506). Sentencing may therefore be based on "fair, accurate and conservative estimates of the quantity of drugs attributable to a defendant." *Id.* (quoting *United States v. Zapata*, 139 F.3d 1355, 1359 (11th Cir. 1998)).

Defendant's suggestion that the only drugs for which she could be held accountable must have been "in her possession" misapprehends the law. A defendant is to be sentenced not merely for all the conduct specifically undertaken by her, but also for "all acts by other participants that were both reasonably foreseeable and in furtherance of the conspiracy, § 1B1.3(a)(1)(B)." *United States v. Matthews*, 168 F.3d 1234, 1247 (11th Cir. 1999). Even if this were not the case, the PSR establishes that defendant was personally responsible for over 1.5 kilograms of cocaine base, sufficient for application of base level 38. The PSR reflects that in defendant's interview with the probation officer, defendant admitted having delivered cocaine base to Alonzo Johnson on at least 50 occasions during the conspiracy and that Johnson purchased four one-ounce cookies per week. (PSR ¶ 97). Johnson stated that the defendant had delivered cocaine base to him approximately 100 times, but usually only two or three cookies (ounces) at a time. (PSR ¶ 103, 150). Even accepting the defendant's estimate of 50 deliveries and Johnson's lower estimate of two ounces per delivery, defendant was still personally responsible for well over 1.5 kilograms of cocaine base,[3] which would maintain her base offense level of 38. She has not shown error in the court's calculation of quantity.

<u>Ineffective assistance of counsel</u>

Defendant contends that counsel was constitutionally ineffective because he failed to object to findings in the PSR. She apparently refers to the gun enhancement and possibly the issue of drug quantity. The calculations of the probation officer and the court with respect to each of these issues was legally correct, as discussed supra. Counsel is

---

[3] Fifty deliveries times 2 ounces (56 grams) per delivery yields 2.8 kilograms of crack cocaine.

*Case No: 3:06cr61/MCR; 3:07cv367/MCR/MD*

not ineffective for failing to preserve or argue a meritless claim. *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit); *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (counsel was not ineffective for informed tactical decision not to make what he believed was a meritless motion challenging juror selection procedures where such a motion has never been sustained because such a motion would not have been successful). An objection to either the application of the firearm adjustment or the quantity of drugs attributed to the defendant would have been futile, and counsel was not constitutionally ineffective for failing to make such objections.

Excessive sentence

Defendant's final ground for relief appears to be that her sentence was excessive. As with other claims discussed above, this claim is both procedurally barred due to her failure to raise it on appeal, and without merit.

Defendant asserts that her 168 month sentence included the mandatory ten year minimum as well as "enhancements which defendant should not have received." Presumably she refers to the firearm adjustment, which as discussed above, was properly applied. She also states that she is a first time offender whose sentence was "too severe" based on the case.

After *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), in order to impose a lawful sentence, a district court must correctly calculate the defendant's appropriate advisory Guidelines range. *United States v. Pope*, 461 F.3d 1331, 1333 (11th Cir. 2006); *United States v. Valnor*, 451 F.3d 744, 750 (11th Cir. 2006); *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005)(per curiam). After the court makes this

calculation, it "may impose a more severe or more lenient sentence as long as the sentence is reasonable." *Pope*, 461 F.3d at 1335; accord *Valnor*, 451 F.3d 750; *Talley*, 431 F.3d at 786. That is, after calculating the defendant's Guidelines range, the court must consider the factors set forth in 18 U.S.C. § 3553(a) and may tailor the defendant's sentence in light of those factors. *Pope*, 461 F.3d at 1335; *Valnor*, 451 F.3d at 750-51; *Talley*, 431 F.3d at 786. The *Talley* Court summarized the § 3553(a) factors as follows:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training and medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims.

*Talley*, 431 F.3d at 786. In reviewing the ultimate sentence imposed by a district court for reasonableness, the Court of Appeals considers "the final sentence, in its entirety, in light of the § 3553(a) factors." *Valnor*, 451 F.3d at 750; quoting *United States v. Thomas*, 446 F.3d 1348, 1349 (11th Cir. 2006). That is, the Court of Appeals reviews the district court's final sentence for reasonableness, as opposed to applying the reasonableness standard to each of the district court's decisions during the sentencing process. *United States v. Campbell*, 491 F.3d 1306, 1313 (11th Cir. 2007); *United States v. Winingear*, 422 F.3d 1241, 1245 (11th Cir. 2005)(per curiam).

In the present case the record established that the defendant was a significant participant in an extensive and violent drug conspiracy over an extended period of time. As noted above, the court granted defendant a safety valve reduction, it considered the fact of her cooperation although it had not yet risen to the level of substantial assistance, and it considered her education and her lack of serious criminal history in sentencing the defendant to the low end of her advisory guideline-range. (Doc. 98, exh. 2 at 8-9). Defendant's disappointment with the lengthy sentence that she received is understandable. However, she has failed to establish that her sentence was unreasonable in light of both

the record and the § 3553(a) factors. See *United States v. Agbai*, 497 F.3d 1226, 1230 (11th Cir. 2007) (affirming a Guideline sentence where there was nothing unique about the case and the district court discussed that it had considered the § 3553(a) factors); *United States v. Orisnord*, 483 F.3d 1169, 1183 (11th Cir. 2007)(affirming a Guideline sentence where nothing in the record demonstrated that the sentence was unreasonable); *United States v. Dowd*, 451 F.3d 1244, 1256-57 (11th Cir. 2006) (affirming a Guideline sentence and a consecutive minimum mandatory sentence where the defendant was 65 years old but committed a significant crime and had done so before); *Talley*, 431 F.3d at 788 (affirming a Guideline sentence where the district court carefully considered the defendant's objections and the defendant failed to explain how the sentence itself was unreasonable). Her disappointment with the length of her sentence does not alone entitle her to relief.

Based on the foregoing, it is respectfully RECOMMENDED:

The motion to vacate, set aside, or correct sentence (doc. 93) be DENIED.

At Pensacola, Florida, this 31st day of January, 2008.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).

*Case No: 3:06cr61/MCR; 3:07cv367/MCR/MD*